## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:  0:20-60683-WPD-CIV-DIMITROULEAS/SNOW

JANE DOE,

                Plaintiff,

      v.

RICKEY PATEL, LLC d/b/a VACATION INN,
SKY MOTEL, INC., LQ FL PROPERTIES LLC
n/k/a CPLG FL PROPERTIES LLC d/b/a LA
QUINTA INN FORT LAUDERDALE
TAMARAC EAST #4006, LQ FL PROPERTIES
LLC n/k/a CPLG FL PROPERTIES LLC
d/b/a  LA QUINTA INN located at 7901 SW 6TH
ST PLANTATION, FL and MW PLANTATION,
LP d/b/a SAWGRASS INN & CONFERENCE
CENTER,
                Defendants.
_____/

### PLAINTIFF'S OMNIBUS RESPONSE TO MOTIONS TO DISMISS
### FILED BY DEFENDANTS SKY MOTEL AND VACATION INN

      Plaintiff, Jane Doe, hereby responds to the motions to dismiss filed by defendants Sky

Motel, Inc. (Doc. 169) and Ricky Patel, LLC d/b/a Vacation Inn (Doc. 170).  In the interest of

judicial economy, Jane Doe is filing a single response to both motions because both defendants

make nearly identical arguments.  As explained below, this case comes to the Court on the cutting

edge of federal legislation intended to empower victims of human trafficking. That legislation

expressly enables survivors like Jane Doe to pursue claims against businesses that chose to look

the other way while facilitating and reaping profits from the sexual exploitation of human beings.

Through their motions, Vacation Inn and Sky Motel asks this Court to ignore both the purpose and

the plain language of the statute at issue.  Both motions should be denied.

## <u>MEMORANDUM OF LAW</u>

**Brief legal background**

Because this case involves a relatively new federal statute, Ms. Doe believes it would aid the Court to have a factual framework as it analyzes the motions to dismiss.

According to the 2019 Trafficking in Persons (TIP) Report, there are 24.9 million total victims of human trafficking today; that is about three times the population of New York City.  In 2018, worldwide, 11,000 traffickers were prosecuted compared to the 85,613 victims identified. https://www.state.gov/wp-content/uploads/2019/06/2019-Trafficking-in-Persons-Report.pdf.

These numbers are staggering because the profit to be made from the sexual exploitation of women, often children, is itself staggering.  According to a 2016 United States Department of Homeland Security report, the sexual exploitation of minors generates billions of dollars each year in illegal proceeds, making it more profitable than any transnational crime except drug trafficking. (sex trafficking yielded $99 billion worldwide in 2014).  International Labour Office, *Profits and Poverty: The* Economics *of Forced Labour* (2014), at 13, *available at* https://www.ilo.org /wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf.

And the numbers are growing. The Department of Justice has reported that more than half of the sex-trafficking victims are 17 years old or younger. In 2014, the National Center for Missing and Exploited Children reported an 846% increase from 2010 to 2015 in reports of suspected  child sex trafficking—an increase the organization has found to be "directly correlated to the increased use of  the  internet  to  sell  children  for  sex." The State of F l o r i d a  h a s  not escaped this horrific trend, ranking third in the United States in human trafficking cases reported by the states.  Only the far larger states of California and Texas have more reported cases.

Hotels, including those owned and operated by the defendants in this case, play integral

roles in aiding sex trafficking. According to the Polaris Project, the non-profit entity that has operated the U.S. National Human Trafficking Hotline for over a decade and analyzes the data gathered from the hotline, in 2014, 92% of the calls it received involved reporting sex trafficking at hotels and motels; the remaining two percent reported a combination of sex and labor trafficking.[1]  Even estimates by attorneys *for* the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[2]  The Polaris Project found that "75% of [sex trafficking] survivors responding to Polaris' survey reported coming into contact with hotels at some point during their exploitation…. Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."[3]

Without the complicity of hotels, where illicit sexual encounters are taken off the street and cloaked in the anonymity of a hotel's customers, the sex trafficking industry in the United States would be hugely disrupted. This obvious fact has been noted by experts[4] and justices of the United States Supreme Court.  In 2015, Justice Antonin Scalia, joined in dissent by Chief Justice John

---

[1] *Human Trafficking and the Hotel Industry*, Polaris Project, https://polarisproject.org/sites/default/files/human-trafficking-hotel-industryrecommendations.pdf (last visited Aug. 3, 2019).

[2] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).

[3] *Hotels and Motels Recommendations*, The Polaris Project, https://polarisproject.org/hotels-motelsrecommendations (last visited Aug. 8, 2019).

[4] Hotel/Motel-Based, National Human Trafficking Hotline, https://humantraffickinghotline.org/sex-traffickingvenuesindustries/hotelmotel-based (last visited Aug. 3, 2019) ("Hotels and motels are a common venue for sex trafficking, due to ease of access for buyers, ability to pay in cash and maintain secrecy through finances, and lack of facility maintenance or upkeep expenses."); *see also* Avni Ahuja, *Sex Trafficking Prevention in Georgia: Equipping Hotel Workers with the Proper Resources*, The Roosevelt Institute, (2017), *available at http://rooseveltinstitute.org/wp-content/uploads/2017/05/715_Final-3-2.pdf* (last visited Aug. 3, 2019) ("Hotels and motels represent a disproportionate site of sex trafficking due to the privacy and anonymity they offer to traffickers, customers, and victims.").

Roberts and Justice Clarence Thomas, noted that,

> Motels . . . are also a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking.  Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers.

*City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting; joined by Roberts, J. and Thomas, J.).  Rather than take measures to prevent human trafficking, such as training staff as to what to look for and how to respond, these hotels and motels, and their respective parent companies, have failed to address the open and obvious presence of human trafficking on hotel properties and continued to profit from traffickers renting rooms for the explicit and readily apparent purpose of human trafficking.

The Trafficking Victims Protection Act ("TVPA"), first enacted in 2000, is the national framework for the federal response to human trafficking.  Victims of Trafficking and Violence Protection Act of 2000, PL 106–386 (Division A), Oct. 28, 2000, 114 Stat 1464.  This original legislation created only criminal offenses for forced labor and sex trafficking.  *A.B. v. Marriott Int'l, Inc.*, CV 19-5770, 2020 WL 1939678, at *6 (E.D. Pa. Apr. 22, 2020).

In 2003, Congress passed the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), which is located at 18 U.S.C. § 1595.  Trafficking Victims Protection Reauthorization Act of 2003, PL 108–193, Dec. 19, 2003, 117 Stat 2875.  Congress found that, since the enactment of the 2000 legislation, the United States "made significant progress in investigating and prosecuting acts of trafficking and in responding to the needs of victims of trafficking in the United States and abroad [but] [o]n the other hand, victims of trafficking have faced unintended obstacles in the process of securing needed assistance ...."  *Id*.  As such, the amendment created a civil right of action for victims to bring against their traffickers, but against traffickers only.  *A.B.*, 2020 WL 1939678, at *6.

4

In 2008, Congress amended the statute again, this time giving "victims a cause of action against those who have profited from their exploitation" and "creates a cause of action for victims of any violation of chapter 77 ***against anyone who benefits from any such a violation***."  Charles Doyle, Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L.110-457): Criminal Law Provisions (2009) (emphasis added). With this amendment, § 1595 "opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture."  Gallant Fish, *No Rest for the Wicked: Civil Liability Against Hotels in Cases of Sex Trafficking*, 23 BUFF. HUM. RTS. L. REV. 119, 138 (2011) (footnotes omitted).

The TVPRA has been updated five times, most recently in January 2019, with strong bipartisan support.

## ARGUMENT

### I.      Ms. Doe's negligence claims establish duty and breach of that duty.

Sky Motel and Vacation Inn claim that Ms. Doe has "failed to state a cause of action for negligence because Plaintiff failed to specifically plead acts of human trafficking at Vacation Inn [or Sky Motel] that would give rise to any duty" to protect Ms. Doe.  Doc. 169, p.4; Doc. 170, p.4. Sky Motel and Vacation Inn further claim that there can be no duty to protect Ms. Doe unless Sky Motel and Vacation Inn were aware of prior similar incidents of trafficking.  They are wrong.

While Florida courts generally do not impose a duty to control the conduct of a third person, Florida courts have long recognized three exceptions to this general proposition:

> the duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of: (1) the instrumentality; (2) ***the premises on which the tort was committed***; or (3) the tortfeasor.      *Daly v. Denny's Inc.,* 694 So.2d 775,        777 (Fla. 4th DCA 1997) (citing *Vic Potamkin Chevrolet, Inc. v. Horne,* 505 So.2d 560, 562 (Fla. 3d DCA 1987)(en banc), *approved,* 533 So.2d 261 (Fla.1988)).

*Michael & Philip, Inc. v. Sierra*, 776 So. 2d 294, 297–98 (Fla. 4th DCA 2000).

Here, there can be no question that the second exception applies. Sky Motel and Vacation Inn were "in actual or constructive control" of the hotels at which Ms. Doe alleges she was trafficked. Both hotels had control over the peril in which Ms. Doe was placed. All the hotel had to do was say, "this does not look right; I'm not going to let this child rent a room" or "I'm going to call the police and report this suspicious behavior" or "gee that is strange that she rents the room for one night at a time but relets it each morning and always pays cash and there is a revolving door of adult males going in and out of the room" or any one of a thousand permutations of these concepts which would have precluded Ms. Doe from being trafficked at the hotel.

But both hotels chose to do nothing. Worse still, as alleged in the complaint at paragraph 47, the manager of Sky Motel chose to actively participate in the trafficking by purchasing a sex act with Jane Doe. Put simply, the defendant hotels controlled whether or not they allowed Jane Doe to be sexually exploited on their properties. And the complaint alleges negligence in the defendant hotels' choice to collect the rent and do nothing to prevent the sexual exploitation of a hotel guest on its property. Jane Doe has stated a claim for negligence.

To the extent Sky Motel claims it cannot be responsible for the conduct of its manager, that is a red herring. Doc.169, pp.5-6. Jane Doe is not suing Sky Motel for the act of its manager. Jane Doe is suing Sky Motel for its long-standing, repeated conduct in allowing her to be sexually trafficked up to ten times a day for days on end. The fact that the hotel manager was aware that he could purchase Ms. Doe for sex only serves as evidence that Sky Motel was aware what was happening on its property and took no steps to protect its guest. Moreover, the complaint plainly alleges that hotel ignored the signs of trafficking so that it could collect the nightly rent – which means the manager's actions would have furthered the financial interest of his employer. *See*

6

Third Amended Complaint, ¶ 48(k).[5]

II.   **Ms. Doe has pleaded that Sky Motel and Vacation Inn benefitted from the trafficking venture in violation of 18 U.S.C. § 1595.**

A. **Ms. Doe adequately alleged that Sky Motel and Vacation Inn "participated in a venture."**

Sky Motel and Vacation Inn claim that there can be no liability under the TVPRA for their conduct unless Ms. Doe alleges that the hotels "actually participate[d] and commit[ed] some overt act that furthers the sex trafficking aspect of the venture."  Doc. 169, p.9; Doc. 170, p.8.  The two hotels cite to a criminal case involving a different statute, *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016), and to a Southern District of New York case, *Noble v. Weinstein*, 335 F. Supp. 3d 504 (SDNY 2018), in support.  The two hotels neglect to mention the authority finding that requiring an overt act would subvert both the purpose and the actual language of the TVPRA.

**The purpose of § 1595(a) requires rejection of the hotels' argument.**

As to the purpose of the act, multiple courts have noted that the civil act was intended to catch more defendants than its criminal counterpart.  The civil action component of the TVPRA provides that:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

---

[5] While drafting this response, undersigned noticed her own cut and paste error.  Paragraph 48 (relating to Sky Motel's negligence) and paragraph 67 (relating to Vacation Inn's negligence) are supposed to be identical.  Due to a human/scrivener error (the intention being to delete only paragraph (i) from the Vacation Inn allegations (regarding the manager seeking a sex act), but accidentally deleting (i), (j) and (k)), paragraphs j and k were cut off in the Vacation Inn allegations.  Vacation Inn did not notice or comment on the error in its motion to dismiss.  However, if the Court believes the paragraphs are necessary, Plaintiff would seek permission to amend the complaint to correct the scrivener's error so that paragraph 48 and paragraph 67 both include items a through k.

18 U.S.C. § 1595(a).

As noted by Judge Marbley in the Southern District of Ohio, the text of the statute "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant 'knew or should have known' that the venture was involved in sex trafficking." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). The *M.A.* case cites to a Report from the Congressional Research Service which interpreted the amendments to the TVPRA to "create[ ] civil liability both for those who face criminal liability for their profiteering ***and those who do not***." *Id.* (citation omitted) (emphasis added); *see also Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3, (N.D. Ga. Sept. 9, 2014) (noting that the 2008 amendments to the TVPRA "ma[de] it easier for victims of trafficking violations to bring civil suits" by broadening the parties who could be sued for trafficking violations to "anyone who 'knowingly benefits…from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.'").

Because the civil component of the TVPRA was intended to cast a much broader net than the criminal component of the TVPRA, Sky Motel and Vacation Inn's citation to the criminal case of *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), is decidedly misplaced. That fact was addressed at length in the *M.A.* case, where the hotel defendants also argued that the *Afyare* opinion should control how a court interprets the civil component of the TVPRA. (More on that below).

**The plain language of § 1595(a) reflects that no overt act is necessary.**

The *M.A.* opinion also rejected the hotel defendants' argument that there must be actual participation in the sex trafficking because of the plain language of § 1595. In construing a statute, a court must start with the language of statute. *See Bailey v. United States*, 516 U.S. 137, 145 (1995). But even a textual analysis is informed "not only [by] the bare meaning of the word but

also [by] its placement and purpose in the statutory scheme." *Id.* "Where, as here, a statute is 'remedial,' it 'should be liberally construed.'" *M.A.*, 425 F. Supp. 3d at 969 (quoting *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)); *Noble v. Weinstein*, 335 F.Supp.3d 504, 515 (S.D.N.Y. 2018) (finding that § 1595 is a "remedial provision" that "requires broad interpretation")). In *Afyare*, "the Sixth Circuit panel looked to the statutory definitions and to the surrounding context," *M.A.*, 425 F. Supp. 3d at 969, when it held that the government must prove that a criminal defendant participated in the sex trafficking venture through an "'overt act' that furthers the sex trafficking aspect of the venture" and that "the defendants associated for the purpose of further the sex trafficking." *Afyare*, 632 F. App'x at 286.

But, as noted by the *M.A.* court, "the language of § 1591 differs from the language of § 1595—the former does not have a constructive knowledge element manifested by 'should have known' language." *M.A.*, 425 F. Supp. 3d at 969. More specifically, the criminal statute, § 1591 says that "[i]n this section…[t]he term 'participation in a venture' means ***knowingly*** assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C.A. § 1591(e)(4) (emphasis added). In contrast, § 1595 says there is liability for "participation in a venture which that person ***knew or should have known*** has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added). There is an obvious difference between "knowingly" and "knew or should have known."

To the extent Sky Motel and Vacation Inn argue that the phrase "participation in a venture" is used in both § 1591 and § 1595 and there is a presumption that they should have the same meaning, the defendants are once again wrong. Doc. 169, p.9, n.3; Doc. 170, p.8, n.3. The "natural presumption that identical words used in different parts of the same act are intended to have the same meaning ... is not rigid and readily yields whenever there is such variation in the

9

connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932); *see also Yates v. United States*, 574 U.S. 528, 537 (2015) ("In law as in life, [ ] the same words, placed in different contexts, sometimes mean different things."). As noted in *M.A.*, on its face "§ 1591(e) purports to only apply to 'this section,' i.e., § 1591." 425 F. Supp. 3d at 969.   Thus, giving meaning to the words "in this section," as the Supreme Court directs that this Court must, the definition found in § 1591 would not apply to § 1595.   *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).   Other courts have likewise found that the § 1591 definition should not be grafted onto other sections. *Gilbert v. U.S. Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *9, *10 (D. Colo. Mar. 6, 2019) (noting that "there are persuasive reasons to conclude ... that the term 'venture' is defined differently in § 1591(a)(2) than it is in § 1589(b)" and "neither §§ 1589 nor 1595 define 'venture'").

More importantly, "applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would void the 'known or should have known' language of § 1595." *M.A.*, 425 F. Supp. 3d at 969.   Such a construction would violate the "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id*. (quoting *TRW Inc.*, 534 U.S. at 31 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).   Section 1591(e)(4) says that "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."   Thus, "participation in a venture" in § 1591 conveys a state of mind requirement—the participation must be "knowing."   *M.A.*, 425 F. Supp. 3d at 969. This is unlike § 1595, which allows liability for knowing or "should have known."   *Id*.

Additionally, "[a]lthough § 1591(a)(2) also criminalizes some action taken with less than

actual knowledge, that is, 'reckless disregard,' such 'reckless disregard' provision applies only to the requirement 'that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.'" *Id*. (quoting § 1591 (a)). The reckless disregard standard "does not lessen the scienter requirement of actual knowledge as to *participation* or the *venture's true ends*." *M.A.*, 425 F. Supp. 3d at 970.

For these reasons, the Southern District of Ohio found in *M.A.* that "participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself." *Id*. Stated differently, hotels "need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless." *Id*. at 971; *see also A.B.*, 2020 WL 1939678, at *13 ("If we imputed this ['knowing'] standard [from § 1591] into section 1595—which does ***not*** define 'participation in a venture'—we would ignore its 'knew or should have known' language.").

The Eastern District of Pennsylvania has also rejected other hotel defendants' reliance on the *Afyare* case and on *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523 (S.D.N.Y. 2018) (the cases upon which Sky Motel and Vacation Inn rely), to require an overt act or participation in the sex trafficking.  In addition to pointing out that *Afyare* was a criminal case dealing with § 1591 as opposed to § 1595, the *A.B.* court also noted that the court in *Noble* did not apply an "overt act" requirement; so, reliance on *Noble* for that argument was equally misplaced.  2020 WL 1939678, at *13.  The *A.B.* went on to say that, "like the [*M.B.* court], we interpret section 1595 as distinct from section 1591's criminal liability." *Id.* at *9.  The *A.B.* court said that *Noble*, relying on *Afyare*,

"essentially required the victim of sex trafficking seeking a civil remedy to first prove a criminal violation of section 1591(a)(2)" and that "[w]e disagree with the reasoning in *Noble*, adopted by the judge in the *Red Roof* cases [cited at footnote 2 of Vacation Inn and Sky Motel's motions], requiring a victim seeking a civil remedy under section 1595 must first prove the criminal offense." *Id*. at *13. "We do not read the language of section 1595 to impose such a burden nor do we interpret the Act as Congress intended such a restrictive reading of the remedial nature of section 1595." *Id*. The *A.B.* court said, "we will not impose a 'knowingly' state of mind requirement to section 1595 [a.k.a., an "overt act" requirement] and ignore language Congress specifically included allowing a civil action against facilitators who should have known about a sex trafficking venture." *Id*. at *14.

*M.A. and A.B.* are not alone in reaching the conclusion that section 1595 does not require an "overt act" or participation that furthers the sex trafficking. The *M.A.* opinion itself cites to *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013), where the District of Connecticut found that defendants participated in a sex-trafficking venture where they maintained affiliations with a school where sexual abuse of minors was taking place. 425 F. Supp. 3d at 970. "The court did not require the priest to have directly participated in the sex trafficking." *A.B.*, 2020 WL 1939678, at *16, n.113.

**The Third Amended Complaint state pleads facts sufficient to establish that Sky Motel and Vacation Inn "participated in a venture" under § 1595(a).**

Having determined that no overt act is necessary, the question is whether Ms. Doe alleged facts sufficient to infer that Vacation Inn and Sky Motel "participated in a venture" under § 1595(a). In *M.A.*, the court denied the hotels' motions to dismiss where the trafficking victim alleged facts very similar to those alleged here. The *M.A.* court said that, "in the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship

between the trafficker and the hotels such that it would appear that the trafficker and the hotels

have established a pattern of conduct or could be said to have a tacit agreement." 425 F. Supp. 3d

at 971.   The *M.A.* court found that the Plaintiff alleged sufficient facts to show Defendants

"participated in a venture" under § 1595 "by alleging that Defendants rented rooms to people it

knew or should have known where engaged in sex trafficking." *Id*.  The specific facts were:

> • The "trafficker often requested rooms near exit doors. Frequently the trash cans
> in the rooms in which M.A. was trafficked would contain an extraordinary number
> of used condoms. The trafficker routinely instructed M.A. to refuse housekeeping
> services. The hotel rooms in which M.A. was trafficked were frequently paid for
> with cash." (ECF No. 1 at ¶ 52).
> • The hotels "failed to recognize or report Plaintiff M.A.s trafficking." (ECF No. 1
> at ¶ 53).
> • "The Plaintiff observed some of the same hotel staff over the course of the time
> she was trafficked for sex at the Defendant hotel properties." (ECF No. 1 at ¶ 54).
> • "At each of the Defendants' hotel properties, M.A. was routinely escorted by her
> trafficker in view of the front desk after her trafficker paid in cash for the reserved
> room out of which the sex trafficking venture was housed." (ECF No. 1 at ¶ 54).
> • "Despite her desperate pleas and screams for help, after being beaten or choked
> at the Defendants' hotel properties, the hotel staff ignored her and did nothing to
> prevent the ongoing and obvious torture she endured while she was regularly
> trafficked for sex at Defendants' hotel properties." (ECF No. 1 at ¶ 55).
> • "The Plaintiff's trafficking operated the sex trafficking venture out of the same hotel
> room for multiple days or weeks in succession." (ECF No. 1 at ¶ 56).
> • "The Plaintiff was forced into sexual encounters with approximately ten (10)
> "johns" per day, and these johns would enter and leave the hotel guest room." (ECF
> No. 1 at ¶ 56).

*Id*. at 968.  In addition, the plaintiff in *M.A.* also alleged that the hotels failed to adequately train

their staff to deal with trafficking.  *Id*.  The court said, "[t]hese allegations are sufficient to survive

a 12(b)(6) motion to dismiss."  *Id*.

Here, Ms. Doe alleged that both hotels:

> participated in the venture of trafficking Plaintiff by providing the location for the
> sexual exploitation to take place.  Without a "safe" location (one such as Vacation
> Inn where the hotel turns a blind eye to red flags and does nothing to prevent
> trafficking or protect the victim), there can be no trafficking.

Doc. 164, p.11, ¶ 55; pp.15-16, ¶ 74.  The complaint further alleges that both hotels

cooperation in the venture exceeded that inherent in the normal room renting transaction because [the hotels] elected to ignore red flags that Plaintiff was being trafficked. [The hotels] knew or should have known that Plaintiff was being sexually exploited in violation of the TVPRA. Plaintiff exhibited red flags upon which [the hotels'] staff should have been trained to act. [And that the hotels] took no steps, and thereby affirmatively avoided, confirming that Plaintiff was a human trafficking victim being exploited on [the hotel's] property. In fact, on information and belief, [neither hotel] has not signed the Hotel Code of Conduct, which would call on [the hotels] to be on the lookout for red flags like those described above.

Doc.164, p.11-12, ¶¶ 55-56, 59; pp.15-16, ¶¶ 74-75, 77. Ms. Doe further alleged that the red flags

each hotel missed included:

> [for Sky Motel] the fact that one of the owner/managers came to the room Jane Doe was in, asked for, and received oral sex. The management clearly knew what was happening to Ms. Doe and allowed it to continue. Ms. Doe stayed in the same room at Sky Motel almost every time she was there [approximately 30 nights – Doc.164, p.11, ¶ 54], a room that overlooked the street and parking lot (so that she could watch for Johns). Plaintiff would stay for approximately 7 to 10 days at a time. She would check in to Sky Motel with a purse and perhaps a small duffel, but nothing else. She would be exploited by anywhere between five and twenty men per day. Ms. Doe's room was directly above the hotel office, so the foot traffic was hard to miss. The men would park, stay in the room for approximately twenty minutes, and then leave. Ms. Doe, on the other hand, would rarely leave the room for days at a time. She would stay at the hotel for seven to ten days at a stretch, leave Sky Motel, and then come back for another seven to ten day stretch. Ms. Doe would turn away housekeeping during the entirety of her stay and ask for sheets to change the bedding herself; she took out her own trash. Ms. Doe always paid cash and she would only pay for one night at a time, booking the next night's stay before check-out time.

(Doc. 164, pp.11-12, ¶ 58)

> [for Vacation Inn] the fact that the property was very small (approximately 20 rooms) and there were cameras all over the hotel and Plaintiff always stayed in a room one door away from the hotel office– so it was hard to miss a room that had lots of men going in and out of it. Plaintiff was aware of the manager being present on the property making his rounds (upon information and belief, the management lived on-site), during the same time that Plaintiff was exploited by up to 20 different men per day. The Vacation Inn is close to the Ft. Lauderdale airport and many Johns came directly from the airport from foreign countries such as China, Africa and Australia – there was no mistaking that the men coming in and out of the room were different. Ms. Doe would turn away housekeeping during the entirety of her stay and ask for sheets to change the bedding herself; she took out her own trash. Ms. Doe always paid cash and she would only pay for one night at a time, booking

the next night's stay before check-out time.  She would check in to Sky Motel with a purse and perhaps a small duffel, but nothing else.

Doc.164, p.16, ¶ 76.

These facts contain the same kind of information as the allegations in *M.A.* and these allegations are more than enough to give rise to an inference that Sky Motel and Vacation Inn "knew or should have known," 18 U.S.C. § 1595(a), that Ms. Doe was being trafficked and that "it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 971; *see also Somaza v. Loancare, LLC*, 17-CV-60976, 2017 WL 7796058, at *1 (S.D. Fla. July 14, 2017) ("Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citations omitted).

To the extent Sky Motel and Vacation Inn complain about insufficient detail in the Third Amended Complaint's allegations, that complaint appears to arise out of a cut and paste job from another case gone wrong.  For example, Sky Motel and Vacation Inn claim that Plaintiff failed to allege the "name of Plaintiff's traffickers;…the names on the reservations; the manner in which the reservations were booked and paid; [and] the duration of the stays."  Doc. 169, p.2; Doc. 170, p.2.  Although it would not be necessary to include such detail in the complaint, the complaint clearly states that her primary trafficker was "a man named Dread."  Doc.164, p.3, ¶ 10.  The complaint likewise states the duration of the stays for each hotel and that the rooms were purchased on a nightly basis by Ms. Doe and always paid for in cash or pre-paid credit cards purchased at Amscot.  Doc.164, pp.11-12, ¶ ¶ 54, 58, p.13, ¶ 65; p.15, ¶ 72.

To the extent Sky Motel and Vacation Inn want to know the names of hotel staff or specific

dates Ms. Doe was trafficked, those are things the hotels can request in discovery. They are certainly not the kind of detail that this Court requires in order to survive a motion to dismiss. *See, e.g.*, *Colony Ins. Co. v. Courtyards at Hollywood Station Homeowners Ass'n, Inc.*, 17-62467-CIV, 2018 WL 7364568, at *1 (S.D. Fla. Mar. 30, 2018) (Rule 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face. [ ] A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [ ] The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover.") (citation omitted).

## B. Ms. Doe alleged that Sky Motel and Vacation Inn knowingly benefitted financially/received something of value

In *M.A.*, like here, the hotel defendants argued that "merely receiving revenue from the rental of a hotel room" could not constitute a benefit under the TVPRA. 425 F. Supp. 3d at 964. Sky Motel and Vacation Inn argue that the "TVPRA requires a 'knowing' benefit, which is something more than the receipt of an incidental benefit." Doc. 169, p.11; Doc. 170, p.10. The defendants in *M.A.*, like Sky Motel and Vacation Inn, also argued that the proper standard for "benefit" is the standard articulated in *Geiss v. The Weinstein Company Holdings, LLC, et al.*, 383 F.Supp.3d 156 (S.D.N.Y. 2019). *Id.*; Doc.169, pp.10-11; Doc. 170, p.10. In *Weinstein*, the Southern District of New York said that the plaintiff must show that the trafficker "provided any of those benefits to [Defendants] because of [Defendants'] facilitation of [the trafficker's] sexual misconduct." *Geiss*, 383 F.Supp.3d at 169. Building on *Geiss*, Vacation Inn and Sky Motel argue that Jane Doe must allege facts showing that her "traffickers rented a room at Vacation Inn [or Sky

Motel] *because* of Vacation Inn's [or Sky Motel's] alleged affirmative acts that facilitated sex trafficking." Doc. 170, p.11 (emphasis in original); *see also* Doc. 169, pp.11-12.

But both the Southern District of Ohio and, just six weeks ago, the Eastern District of Pennsylvania, have rejected that logic. In *H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019), the court wrote that § 1595 "requires that Defendant knowingly benefit financially, not that the perpetrator compensate Defendant 'on account of' the sex trafficking." In *M.A.*, Judge Marbley noted that the exacting definition of "benefit" that the hotel defendants demand is not supported by the caselaw. *M.A.*, 425 F. Supp. 3d at 964. The *M.A.* opinion stated that "the District Court of Colorado interpreted § 1595 liability premised on § 1589(b) (the forced labor provision of the statute) not to 'require[ ] the party to benefit from the [forced] labor or services for liability to attach" and that the Colorado court "found that the defendant had received a benefit through 'collecting money through sponsorships, licensing, grants, publicity, [and] for medals achieved at competitions.'" *Id*. (quoting *Gilbert,* 2019 WL 4727636, at *16 (citation omitted)).   The *M.A.* court also pointed out that "in *Ratha v. Phatthana Seafood Co., Ltd.*, the court looked to the relatively small portion of seafood a seller procured from a facility that engaged in human trafficking and that the defendant never actually sold any product that was made at the facility." *M.A.*, 425 F. Supp. 3d at 965 (citing *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *6 (C.D. Cal. Dec. 21, 2017)). Based on these cases, the *M.A.* court said that **"**M.A. has alleged that Defendants rented rooms to the trafficker, and therefore benefited financially. This Court finds that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965.

On April 22, 2020, the Eastern District of Pennsylvania concurred with Judge Marbley's

conclusion. *A.B.*, 2020 WL 1939678, at *15.  In *A.B.*, similar to this case, the plaintiff alleged that "her trafficker rented rooms for weeks at a time, paid with a prepaid credit card, checked her in with little personal belongings, a steady stream of male visitors entered the hotel through the front doors and main lobby, and the rooms bore signs of illicit sexual activity" and that "Marriott knew or should have known of these 'red flags' but nevertheless continued to rent rooms to A.B.'s traffickers and received financial benefit from sex trafficking."  *Id*.  The *A.B.* Court said these allegations "are sufficient to meet the 'knowingly benefitted' element of a civil claim under section 1595 of the Act."  *Id*.

Here, Jane Doe has alleged that she rented rooms for multiple nights, but only rented one night at a time, renewing just before check out each day, that she checked in with very little in the way of personal belongings, that there were a steady stream of male visitors, that she always turned away housekeeping and took out her own garbage (so that they could not see the paraphernalia in her garbage), and that Vacation Inn and Sky Motel ignored these red flags so they could provide a safe location for sexual exploitation to take place and continue receiving the room revenue. Doc.164, pp.11-12, ¶¶55-60, pp.15-16, ¶¶74-78.  Ms. Doe has adequately pleaded the receipt of a benefit.

### C.  Ms. Doe adequately alleged that Sky Motel and Vacation Inn knew or should have known of an act in violation of the TVPRA

Once again, the *M.A.* and *A.B.* cases analyzed the same arguments raised by Vacation Inn and Sky Motel – that the *Ratha* and *Ricchio* cases control and require an "actual knowledge or reckless disregard" standard (Doc. 169, pp/12-13; Doc.170, pp.12-13) – and rejected them.

In *M.A.*, Judge Marbley discussed the *Ricchio* case and recognized that the *M.A.* plaintiff's "facts do not suggest a direct agreement between her trafficker and any of the hotel defendants" or that "a specific hotel staff member saw her in a deteriorated state."  425 F. Supp. 3d at 966.  "But,"

wrote Judge Marbley, "***M.A. does not need to prove reckless disregard under § 1595(a)***, only that

the Defendants 'should have known' about the nature of the venture under a negligence standard.

***This does not require evidence of actual knowledge or conspiracy between Defendants and the***

***trafficker.***" *Id*. (emphasis added).

In *A.B.*, the court rejected the argument that *Ratha* should control, noting that, in *Ratha*,

"the court entered summary judgment in favor of the defendant because the ***evidence*** under the

Rule 56 standard did not support plaintiffs' claims," but the summary judgment standard and the

motion to dismiss standard are worlds apart.  *A.B.*, 2020 WL 1939678, at *17 (emphasis in

original).  The *A.B.* court found that the following allegations, which are similar to the facts alleged

by Jane Doe, were sufficient to "plausibly allege Marriott knew or should have known of a sex

trafficking venture involving A.B." at its hotels:

> we read A.B.'s allegations regarding the hospitality industry generally as
> background and supporting A.B.'s allegation Marriott, along with other hotel
> brands, knew about the problem of sex trafficking. We draw all reasonable
> inferences from A.B.'s amended complaint on a motion to dismiss: between 2009-
> 2011, A.B.'s traffickers used Marriott's three Philadelphia Airport hotels to sell
> illegal sex acts; as many as six men an evening entered each of the three hotels as
> an "unannounced guest," creating a "voluminous and obvious" constant stream of
> male visitors to A.B.'s rooms accessed through the front door and main lobby of
> the hotels; A.B.'s trafficker repeatedly paid for rooms at each of the three hotels for
> at least a week at a time with prepaid credit cards and hotel staff were aware of
> A.B.; when A.B.'s trafficker brought her to the hotels, she presented with little, if
> any, luggage, no phone, wallet, or identification, and when checking A.B. into the
> hotel, he would not proceed to the room; rooms rented for trafficking were littered
> with multiple broken objects, used condoms, and other sex paraphernalia which
> would have been noticed by staff; and staff at all three hotels observed A.B. with
> signs of visible injury on more than one occasion, frequent loud altercations, and
> attacks on A.B. by her trafficker were constant and loud enough for hotel patrons
> and staff to hear.
> …
> At this stage, we can readily interpret A.B. as pleading Marriott should have known
> of a sex trafficking venture at the three airport hotels. Unlike a one-time visit,
> A.B.'s pleaded return visits with similar characteristics also allow us to infer
> Marriott knew of the sexual trafficking in A.B.'s prepaid hotel room.

*Id.*  Similar to A.B., Ms. Doe has alleged that Sky Motel and Vacation Inn knew about the hotel industry standards and chose to ignore them, that there was a steady stream of men in and out of her rooms, that the location of the room gave hotel management the ability to see that steady stream, that the rooms were rented one night at a time but renewed for multiple nights, always paying with cash or a pre-paid credit card, that Jane Doe checked in with little to no personal possessions, and that she turned away housekeeping and that she took out her own trash so that no one could see the sex paraphernalia. Doc.164, pp.3-4, 11-12, 15-17, ¶¶ 14-21, 54-60, 72-78. As it relates to Sky Motel, Ms. Doe alleges that the manager had active knowledge of her trafficking.  Doc.164, p.11, ¶ 56.  Ms. Doe's allegations are sufficient to give rise to an inference that Sky Motel and Vacation Inn knew or should have known that there was a sex trafficking venture going on at their properties.

## Conclusion

For the foregoing reasons, the motions to dismiss filed by Sky Motel (Doc.169) and Vacation Inn (Doc. 170) should be denied.

*/s/ Maegen Peek Luka*

**C. RICHARD NEWSOME, ESQUIRE**
Florida Bar No.:  827258
**R. FRANK MELTON, ESQUIRE**
Florida Bar No.: 0475440
**MILETTE E. WEBBER, ESQUIRE**
Florida Bar No.:  145874
**MAEGEN PEEK LUKA**
Florida Bar No.: 549851
**NEWSOME MELTON**
201 South Orange Avenue, Suite 1500
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
*Attorneys for Plaintiff*

*newsome@newsomelaw.com*
*melton@newsomelaw.com*
*webber@newsomelaw.com*
*swinehart@newsomelaw.com*
*oneill@newsomelaw.com*
*luka@newsomelaw.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2020 a true and correct copy of the foregoing was

furnished by CM/ECF to all counsel of record as listed below.


/s/ *C. Richard Newsome*

*Attorney*

J. Trumon Phillips
Florida Bar No. 84568
Fredrick H.L. McClure
 Florida Bar No. 147354
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: Fredrick.mcclure@dlapiper.com;
        trumon.phillips@dlapiper.com
        Sheila.hall@dlpiper.com


David Sager (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, NJ 07078-2704
Phone: 973-520-2550
 Fax: 973-520 2551
Email: david.sager@dlapiper.com

 *Attorneys for Defendants, CPLG of FL, LLC,*
  *CPLG of FL, LLC dba La Quinta Inn*
  *Fort Lauderdale Tamarac East #4006 and*
  *La Quinta located at 7901 SW 6th St. Plantation*

Joseph J. Goldberg
Florida Bar No. 91107
Lindsey A. Adler

21

Florida Bar No. 1010168
**Cole Scott & Kissane, P.A.**
9150 South Dadeland Blvd., Suite 1400
Miami, FL 33256
Phone:  Phone:  305-350-5300
Email*:  [joseph.goldberg@csklegal.com](mailto:joseph.goldberg@csklegal.com)*
        *[Lindsey.Adler@csklegal.com](mailto:Lindsey.Adler@csklegal.com)*

*Attorneys for Defendants Rickey Patel, LLC d /b/a Vacation Inn and Sky Motel, Inc.*


Bruce Trybus
Florida Bar No. 972983
Kelly Lenahan
Florida Bar No. 106068
**Cooney Trybus Kwavnick Peets**
1600 W. Commercial Blvd., Suite 200
Fort Lauderdale, FL 33309
Phone:  954-568-6669
Fax:  954-568-0085
Email: [reception@ctkplaw.com](mailto:reception@ctkplaw.com)
        [yhall@ctkplaw.com](mailto:yhall@ctkplaw.com)
        [tzerof@ctkplaw.com](mailto:tzerof@ctkplaw.com)

*Attorneys for Defendant*
*MW Plantation, LP d/b/a Sawgrass Inn & Conference Center*